CHICAGO TITLE INSURANCE
COMPANY, Appellant,

v.

William H. HUFF, III, as Commissioner
of Insurance of the State of
Iowa, Appellee,

Iowa State Bar Association,
Intervenor-Appellee,

Iowa Land Title Association,
Intervenor-Appellee.

No. 2–57752.

Supreme Court of Iowa.

June 29, 1977.

Michael P. Joynt, Wasker, Sullivan, Wheatcraft & Ward, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Elizabeth A. Nolan, Asst. Atty. Gen., for appellee.

John A. McClintock, Hansen, Wheatcraft & McClintock, Des Moines, for intervenor-appellee Iowa State Bar Association.

B. A. Webster, Gamble, Riepe, Burt, Webster & Fletcher, Des Moines, for intervenor-appellee Iowa Land Title Association.

RAWLINGS, Justice.

Equity action by plaintiff seeking to enjoin enforcement by defendant of Section 515.48(10), The Code 1973, which prohibits corporations doing business in this jurisdiction from insuring titles to real estate, resulted in adjudication adverse to plaintiff and it appeals. We affirm.

Plaintiff, Chicago Title Insurance Company (Chicago Title), is a foreign corporation. May 29, 1972, it duly caused to be filed in the office of defendant, William H. Huff III, Iowa Insurance Commissioner, an application for authority to operate as an insurer of real estate titles in this jurisdiction. August 8, this application was denied because of the aforesaid statutory enactment which provides:

"Any company organized under this chapter or authorized to do business in this state may:

"Insure any additional risk not specifically included within any of the foregoing classes, which is a proper subject for insurance, is not prohibited by law or contrary to sound public policy, and which, after public notice and hearing, is specifically approved by the commissioner of insurance, *except title insurance or insurance against loss or damage by reason of defective title, encumbrances or otherwise.* When such additional kind of insurance is approved by the commissioner he shall designate within which classification of risks provided for in Section 515.49 it shall fall." (emphasis supplied).

The present action ensued. By its petition seeking injunctive relief Chicago Title asserts, in material part:

"That Section 515.48(10) of the Code of Iowa violates the Plaintiff's property rights under the Constitutions of the United States and the State of Iowa in

that the Plaintiff is being denied the right to do business in Iowa *without due process of law*, and is being denied the *equal protection of the laws*. With the sole exception of the State of Iowa, the business of title insurance is recognized as a lawful commercial enterprise in every jurisdiction of the United States, and said statute *is* unreasonable, arbitrary and constitutes unconstitutional class legislation." (emphasis supplied).

August 23, 1974, after hearing on the merits, trial court entered "Findings of Fact and Conclusions of Law". In salient part the court below concluded:

"It is not the function of the Court to question the wisdom of the legislature in the enactment of Section 515.48(10) Code of Iowa 1973 prohibiting the sale of title insurance in the State of Iowa. That prohibition violates neither the plaintiff's Fourteenth Amendment rights under the United States Constitution or the rights of a citizen of Iowa guaranteed by Article I, Section 1 of the Constitution of the State of Iowa. The prohibition does not take plaintiff's property without *due process of law*, or deny it the *equal protection of the laws*. Plaintiff's prayer for injunctive relief must therefore be denied." (emphasis supplied).

October 14, 1974, a decree was attendantly entered from which this appeal is taken.

Plaintiff here raises these issues:

(1) Did trial court err by applying federal standards of due process?

(2) Does Section 515.48(10) deprive plaintiff of a property right without due process of law? (Iowa Const. art. 1, § 9; U.S.Const. amend. XIV, § 1).

(3) Does Section 515.48(10) violate the equal protection clause of the U.S.Const. (amend. XIV, § 1) or the uniformity clause of the Iowa Const. (art. 1, § 6)?

(4) Does Section 515.48(10) violate the commerce clause of the U.S.Const. (art. I, § 8, cl. 3)?

We have been materially aided in resolving these questions by able amicus curiae briefs submitted on behalf of intervenors, Iowa State Bar Association and Iowa Land Title Association.

I. Our review is de novo. See *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 289 (Iowa 1975); Iowa R. Civ. P. 334, 344 (f)(7).

II. By way of exclusion, the last assignment will be first considered.

As previously noted Chicago Title now takes the position, inter alia, Code § 515.-48(10) violates the commerce provision, U.S. Const., art. I, § 8, cl. 3, which says in relevant part: "The Congress shall have Power * * * to regulate Commerce * * * among the several States * *." Plaintiff concedes, however, this issue is not raised by the pleadings. On the other hand, it contends testimony in course of trial "reveals the extensive concern of the parties with the interstate features." Another argument advanced is that trial court considered the issue as evidenced by citations included in the conclusions of law which involved interstate commerce burdens imposed by state economic regulations. We are not so persuaded.

In the first place any sporadic and phantasmagoric course of trial allusion to interstate features of the present case is a far cry from invocation of the subject commerce clause. It never alerted opposing counsel to existence of any such constitutional issue and, by the same token, accorded them no fair opportunity to make a counter showing.

Moreover, it is evident trial court never entertained or resolved the commerce clause as an issue in the case. Rather, an examination of its "Findings of Fact and Conclusions of Law", reveals the adjudication from which this appeal is taken focuses upon and resolves nothing more than the due process of law and equal protection issues as plead by plaintiff.

Citation of cases in analysis of the due process and equal protection issues, which may also involve the commerce clause, are not deemed a consideration of the latter by trial court.

Significantly, plaintiff never sought enlarged or amended findings and conclusions by trial court as permitted by Iowa R.Civ.P. 179(b). See also *Michael v. Merchants Mutual Bonding Company*, 251 N.W.2d 531, 533 (Iowa 1977).

■ In light of the foregoing, Chicago Title preserved nothing for review regarding any claimed Code § 515.48(10) violation of its rights under the above cited commerce clause. *Johnson v. Board of Adjustment, Etc.*, 239 N.W.2d 873, 878 (Iowa 1976), quoting from *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 190 (Iowa 1974).

It is therefore apparent plaintiff now attempts to inject a constitutional provision never raised or considered below. In that regard this court has said:

"As a general rule, invalidity of a statute or ordinance, in order to be relied on, must be specifically raised by the pleadings distinctly pointing out in what manner or respect the statute or ordinance violates the provision invoked and the facts relied on to show unconstitutionality must be clearly made to appear.

"In *Buda v. Fulton*, 261 Iowa 981, 989, 157 N.W.2d 336, 341 we said:

" 'This court has consistently held a constitutional challenge must specify the provisions invoked and state with particularity the details of any claimed transgression. * * * [Citing authorities].

" 'Generally a court will not inquire into constitutional issues on its own motion. * * * [Citing authorities].

" 'Pursuing the matter one more step, an issue should not ordinarily be considered in a noncriminal proceeding unless fairly raised by the pleadings. * * * [Citing authorities].' " *Cole v. City of Osceola*, 179 N.W.2d 524, 531 (Iowa 1970).

Chicago Title's attempt to here, for the first time, raise the commerce clause as an issue cannot be permitted.

■ Though neither placed in question by the pleadings nor argued by the parties, it is deemed appropriate to observe the Congress, by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, authorized the various states to regulate the insurance business, notwithstanding absence of Congressional action under provisions of United States Const., art. I, § 8, cl. 3. In actuality, "The McCarran-Ferguson Act, * * * mandates that the business of insurance shall be regulated by the states." *Insurers' Action Council, Inc. v. Heaton*, 423 F.Supp. 921, 926 (D.Minn.1976). Moreover, the United States Supreme Court has held the states may impose burdens on the insurance industry which, absent said Act, would be struck down under the commerce clause. *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946); *In re Insurance Tax Cases*, 160 Kan. 300, 161 P.2d 726 (1945), aff'd. 328 U.S. 822, 66 S.Ct. 1360, 90 L.Ed. 1602 (1946). Also, as stated in *Robertson v. California*, 328 U.S. 440, 458, 66 S.Ct. 1160, 1170, 90 L.Ed. 1366 (1945): "For the commerce clause is not a guaranty of the right to import into a state whatever one may please, absent a prohibition by Congress, regardless of the effects of the importation upon the local community." *Robertson* upheld a California statute which prevented an out-of-state insurer from operating, save on a legal reserve basis, unless engaged in such business other than on such basis prior to January 1, 1940.

■ It has also been judicially recognized that title insurance is an aspect of the insurance industry which the states may regulate. *Lawyers Title Co. of Mo. v. St. Paul Title Ins. Co.*, 526 F.2d 795 (8th Cir. 1975); *McIlhenny v. American Title Ins. Co.*, 418 F.Supp. 364 (E.D.Pa.1976).

In sum total, we are constrained to observe Chicago Title's omission of any commerce clause issue in the pleadings and trial of the case was presumably premised on the insurance industry-wide recognition of the fact there exists a Congressional overlay of the McCarran-Ferguson Act which forestalls any serious consideration of the commerce clause in this cause.

The commerce clause issue, having been belatedly urged, is neither rightfully in the case nor will it be entertained or considered. *Foods, Inc. v. Leffler*, 240 N.W.2d 914, 919

(Iowa 1976); *Presbytery of Southeast Iowa v. Harris*, 226 N.W.2d 232, 234 (Iowa 1975); *State v. Kelly*, 224 N.W.2d 456, 458 (Iowa 1974).

III. As a prologue to an analysis of the remaining issues raised on appeal, we observe Chicago Title's arguments are foundationed upon a premise, which, if accepted at face value, would make it difficult if not impossible to effect a rational appellate review. In this regard it contends, "The absolute prohibition of a *legitimate business* as mandated by Code § 515.48(10) cannot be sustained." It is similarly suggested by Chicago Title that if a business is "lawful" or "legitimate", such activity is somehow clothed with an aura immunizing it from exclusion by any state legislature. The leitmotif of this argument is that title insurance is written by Chicago Title in all but four states, hence, it is a business which must be permitted to operate in Iowa. This self-serving rationale manifests a misinterpretation of a state's powers in our federal system and the forms of activity which enjoy constitutional protection. Illustratively, a state may prohibit a corporation from owning farmland, and provide for escheat thereof to the sovereign. See *Asbury Hospital v. Cass County, N.D.*, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6 (1945). In *Asbury Hospital* the Court upheld validity of a North Dakota statute prohibiting corporations from owning farmland after a ten year grace period during which it could be sold. If not so timely divested, the property escheated, to be thereupon disposed of by the locus county with net proceeds payable to the former owner. Because of its aptness we quote this from *Asbury Hospital*, 326 U.S. at 211–212, 66 S.Ct. at 63–64:

"The Fourteenth Amendment does not deny to the state power to exclude a foreign corporation from doing business or acquiring or holding property within it. *Horn Silver Mining Co. v. New York*, 143 U.S. 305, 312–315, 12 S.Ct. 403, 404, 405, 36 L.Ed. 164; *Hooper v. California*, 155 U.S. 648, 652, 15 S.Ct. 207, 209, 39 L.Ed. 297; *Munday v. Wisconsin Trust Co.*, 252 U.S. 499, 40 S.Ct. 365, 64 L.Ed. 684; *Crescent Cotton Oil Co. v. Mississip-*

pi, 257 U.S. 129, 137, 42 S.Ct. 42, 44, 66 L.Ed. 166. While recognizing the unqualified power of the state to preclude its entry into the state for these purposes, appellant points out that the state has permitted it to enter and to invest its money in obligations secured by mortgage on land within the state, in consequence of which it lawfully acquired the land free of restrictions. Appellant argues that the state may not, by later legislation, force a sale of the land thus innocently acquired, under conditions which do not allow recovery of the original investment. But a state's power to exclude a foreign corporation, or to limit the nature of the business it may conduct within the state, does not end as soon as the corporation has lawfully entered the state and there acquired immovable property. Subsequent legislation excluding such a corporation from continuing in the state has been sustained as an exercise of the general power to exclude foreign corporations which does not offend due process. *Hammond Packing Co. v. Arkansas*, supra, 212 U.S. 322, 342, 343, 29 S.Ct. 370, 376, 377, 53 L.Ed. 530, 15 Ann.Cas. 645; see also *Baltic Mining Co. v. Massachusetts*, 231 U.S. 68, 83, 34 S.Ct. 15, 17, 58 L.Ed. 127. Similarly, this Court has upheld legislation imposing burdens greater than those to which such corporations were subject at the time of their entry on the ground that the state might exclude them altogether at a later date, *Philadelphia Fire Association v. New York*, 119 U.S. 110, 7 S.Ct. 108, 30 L.Ed. 342; *Horn Silver Mining Co. v. New York*, supra; see also *Crescent Cotton Oil Co. v. Mississippi*, supra; *Lincoln National Life Ins. Co. v. Read*, 325 U.S. 673, 65 S.Ct. 1220, 89 L.Ed. 1861. Appellant, even if its activities in North Dakota are now restricted to the ownership of farm land within the state, stands in no better position to invoke the protection of the Fourteenth Amendment. The total exclusion of a corporation owning fixed property within a state requires it to sell or otherwise dispose of such property. Appellant

must do no more. While appellant is not compelled by the present statute to cease all activities in North Dakota, the greater power includes the less.

"Since the state may validly require appellant to sell its farm land, the contention that the statute is wanting in due process because conditions have been such since its enactment that appellant has been and will be unable to salvage an investment made more than ten years before raises no substantial constitutional question. The due process clause does not guarantee that a foreign corporation when lawfully excluded as such from ownership of land in the state shall recapture its cost."

■ In summary, issues presented on this appeal may not be resolved in terms of alleged "lawfulness" or "legitimacy" of the title insuring business. If such were the case, corporations permitted to lawfully operate gambling casinos in other jurisdictions could conceivably argue the same business would be, ipso facto, legitimate in Iowa. Surely a business activity deemed "lawful" or "legitimate" in forty-nine states does not compel Iowa, or any other state, to embrace the same standards. The genius of our federal system is to permit the states to experiment at local levels with those laws thought to be in the best interests of their citizenry. So we are in truth here called upon to determine whether the Iowa system for transferring real property titles shall, as a constitutional mandate, be burdened with an additional and costly layer of "business activity" which our legislature has expressly prohibited.

IV. Chicago Title initially asserts trial court erroneously assumed "the views expressed by the United States Supreme Court * * * would be applicable to the Due Process clause of the Iowa Constitution".

■ Unquestionably, this court must determine Iowa constitutional requirements, and in so doing is under no obligation to uphold a local statute merely because the United States Supreme Court has deemed it not unconstitutional. *Davenport Water Co.*

*v. Iowa State Commerce Com'n.*, 190 N.W.2d 583, 593 (Iowa 1971). See generally Hetherington, "State Economic Regulation and Substantive Due Process of Law", 53 N.W.U.L.Rev. 226, 244, 248 (1958).

■ But where, as in the present case, federal and state constitutional provisions contain a similar guaranty, they are usually deemed identical in scope, import and purpose. *Shearer v. Perry Community Sch. Dist.*, 236 N.W.2d 688, 691–692 (Iowa 1975).

■ More to the point, we are not bound by, but may look to, United States Supreme Court interpretations of the 14th Amendment due process provision for such light and guidance as they may afford. *Davenport Water Co. v. Iowa State Commerce Com'n.*, 190 N.W.2d at 593; *Duncan v. City of Des Moines*, 222 Iowa 218, 227, 268 N.W. 547 (1936); cf. *Hubbard v. State*, 163 N.W.2d 904, 909 (Iowa 1969). See also 20 Am.Jur.2d, Courts, §§ 225–227.

Nonetheless, plaintiff argues this court places tighter restrictions on attempted extensions of legislative authority. Supportively cited is *Central States Theatre Corp. v. Sar*, 245 Iowa 1254, 1259, 66 N.W.2d 450, 453 (1954), where it is said: "The right to operate a legitimate business is one which the state may regulate *but may not prohibit or unreasonably restrict*." (Emphasis supplied). Without question this unqualified facially authoritative statement has since been repeated. See *Pierce v. Inc. Town of LaPorte City*, 259 Iowa 1120, 1123, 146 N.W.2d 907 (1966); *Plaza Recreational Center v. Sioux City*, 253 Iowa 246, 254–255, 111 N.W.2d 758 (1961); *Stoner McCray System v. City of Des Moines*, 247 Iowa 1313, 1322–1323, 78 N.W.2d 843 (1956); cf. *Sperry & Hutchinson Co. v. Hoegh*, 246 Iowa 9, 65 N.W.2d 410 (1954); *Gilchrist v. Bierring*, 234 Iowa 899, 14 N.W.2d 724 (1944). More later on this subject.

■ Distinguishably, the United States Supreme Court has refused to draw any line of demarcation between "prohibitory" or "regulatory" laws. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963). Also, in the federal due process

field the presumption of statutory validity is especially protected. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Daniel v. Family Security Life Ins. Co.*, 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1949); Heatherington, "State Economic Regulation and Substantive Due Process of Law", 53 NW.U.L.Rev. 13, 28 (1958).

In substance, trial court held the Iowa general assembly was free to decide whether insuring of titles to real property in this state was a form of insurance activity to be permitted. Under guidance of the above noted federal cases, the court below refused to invalidate the instant statutory prohibition on due process grounds.

Plaintiff argues, however, trial court erred in superimposing the above cited United States Supreme Court decisions on the above quoted more restrictive rule found in *Central States Theatre.*

As a preface to further consideration of the problem at hand it is apparent Chicago Title leans heavily upon the foregoing italicized portion of the quote from *Central States Theatre.* Despite any views expressed to the contrary, this court is not convinced the above quoted portion of the *Central States Theatre* opinion is obiter dictum. Rather, it appears to have been germane to the principal issue in that case and at least judicial dictum. See *Galvin v. Citizens Bank*, 217 Iowa 494, 498, 250 N.W. 729 (1933); *Perfection T. &. R. Co. v. Kellogg-MacKay*, 194 Iowa 523, 530, 187 N.W. 32 (1922); *State v. Naftalin*, 246 Minn. 181, 74 N.W.2d 249, 266 (1956); *Beloit Corp. v. Department of Industry, Lab. & H. Rel.*, 63 Wis.2d 23, 216 N.W.2d 233, 238 (1974); 20 Am.Jur.2d, Courts, § 190; 21 C.J.S. Courts § 190b.

Be that as it may, *Central States Theatre* involved a statutory delegation of licensing power to a township administrative body, absent any guidelines, under which the local governing board could discriminately deny a license for operation of a lawful enterprise. In holding such tangential prohibition violated constitutional due process rights this court said, 245 Iowa at 1260, 66 N.W.2d at 453:

"It is true the police power of the state permits the licensing and regulation of legitimate businesses where necessary for the public good. But this regulation must not be capricious, arbitrary or unreasonable. It must have some relation to the general welfare, and it may not *ordinarily* go to the extent of entire prohibition of operation of the business." (Emphasis supplied).

The court then proceeded to articulate the extant rule against enactment of legislation delegating unlimited licensing power to township trustees under which that tribunal could indiscriminately grant or deny a license for operation of a business. Obviously, the exercise of discretionary power by a subordinate local governing body under statutory authority is a far cry from the law-making prerogative vested in our general assembly.

Moreover, *Central States Theatre* significantly accorded recognition to the fact that our legislature may not *ordinarily* prohibit the operation of a business but is free to do so if such forbiddance has "some relation to the general welfare".

■ It therefore follows the aforesaid abstract statement "may not prohibit" relied on by Chicago Title, lifted out of context, is not here controlling. Rather, it must be viewed and qualifiedly applied in accord with the aptly broadened statement above set forth at length.

This means Chicago Title's reliance upon an erstwhile barren statement that a state "may not prohibit" the operation of a "legitimate" business is misplaced.

■ Pursuing the subject further, it is apparent *Central States Theatre* recognized the right vested in our state legislature to prohibit any business venture deemed inimical to general welfare.

■ Additionally, the modern tendency is to extend rather than restrict economic policy regarding enactment of police power legislation. *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 2516–2517, 49

L.Ed.2d 511 (1976); *Steinberg-Baum & Co. v. Countryman,* 247 Iowa 923, 931, 77 N.W.2d 15 (1956).' In fact, we have held the State may, under its police power, constitutionally regulate any business endeavor which is detrimental to the people if not properly conducted, or even *prohibit* an activity found to be essentially injurious to public welfare. *State ex rel. Turner v. Koscot Interplanetary, Inc.,* 191 N.W.2d 624, 630 (Iowa 1971).

█ It is to us evident trial court justifiably invoked federal Supreme Court decisions in order to evaluate the enforceability of Code § 515.48(10) under our state due process standards.

█ V. At this point a reference to some pertinent and well settled guiding principles is deemed appropriate.

"It is well settled regularly enacted statutes are accorded a strong presumption of constitutionality. (Citations).

"Then too, where the constitutionality of a statute is merely doubtful this court will not interfere. (Citations).

"And legislative enactments will not be held unconstitutional unless they are shown to clearly, palpably and without doubt infringe upon constitutional rights. (Citations).

"Finally, a party attacking any statutory enactment must negate every reasonable basis of support for such statute. (Citations)." *State v. Kueny,* 215 N.W.2d 215, 216–217 (Iowa 1974).

As summarized in *Keasling v. Thompson,* 217 N.W.2d 687, 689–690 (Iowa 1974):

"[Plaintiff has] assumed a heavy burden as the following propositions are well established. Ordinarily, statutes, with notable exceptions not here involved, regularly enacted by the legislature will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the validity of the legislation attacked. One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. Where the

constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution. *Hearth Corporation v. C–B–R Development Co., Inc.,* Iowa, 210 N.W.2d 632, 636, 637; *State v. Vick,* Iowa, 205 N.W.2d 727, 729, and the many authorities cited in these opinions. The legislature is given wide discretion in defining the limits of classes when a statute involves classification of persons or things. If a classification is reasonable and operates equally upon all within the class, it is a valid classification. *Brown Enterprises, Inc. v. Fulton,* Iowa, 192 N.W.2d 773, 776 and citations.

"The judicial branch of the government has no power to determine whether legislative Acts are wise or unwise, nor has it the power to declare an Act void unless it is plainly and without doubt repugnant to some provision of the Constitution. *Graham v. Worthington,* supra, 259 Iowa 845, 850, 851, 146 N.W.2d 626, 631."

See generally *State v. Bahl,* 242 N.W.2d 298, 300 (Iowa 1976); *Iowa City v. Nolan,* 239 N.W.2d 102, 103 (Iowa 1976); *Catholic Char. of Arch. of Dubuque v. Zalesky,* 232 N.W.2d 539, 543 (Iowa 1975); *State v. Hall,* 227 N.W.2d 192, 193–194 (Iowa 1975); Code § 4.4(1).

█ Also, a law is not subject to constitutional attack because of some hardship thereby imposed. See *Diamond Auto Sales, Inc. v. Erbe,* 251 Iowa 1330, 1335–1336, 105 N.W.2d 650 (1960).

Further in this area, because of its peculiar apposition, we note *Green v. Shama,* 217 N.W.2d 547 (Iowa 1974). In the cited case Code §§ 157.1 and 158.2 were challenged by Iowa cosmetologists upon the premise they violated Amendment 14, United States Constitution, and § 9, art. I, Iowa Constitution. In resolving the question adverse to the challengers, we said, 217 N.W.2d at 554–555:

"A citizen has a right to be free in the enjoyment of all his faculties, to be free to use them in all lawful ways, to live and

work where he wishes, to earn his livelihood by any lawful calling and to pursue any livelihood or advocation. *Allgeyer v. State of Louisiana*, 165 U.S. 578, 589–591, 17 S.Ct. 427, 431, 41 L.Ed. 832, 836; *Meyer v. Nebraska*, 262 U.S. 390, 399–400, 43 S.Ct. 625, 626–627, 67 L.Ed. 1042, 1045. This right is, of course, subject to the police power of the state to enact laws essential to the public safety, health, or morals. To justify the state in exercising such authority, however, it must appear the public interest requires such interposition and that the means are reasonably necessary for accomplishing the purpose and not unduly oppressive to individuals. It is thus a fundamental precept of constitutional law that matters within the police power of the state relating to public health may be regulated by the legislature. *Meyer v. Nebraska*, supra; *Allgeyer v. State of Louisiana*, supra; *New State Ice. Co. v. Liebmann*, 285 U.S. 262, 273, 52 S.Ct. 371, 372, 76 L.Ed. 747, 751; *Clark v. District Court*, 255 Iowa 1005, 1008, 125 N.W.2d 264, 266; *City of Osceola v. Blair*, 231 Iowa 770, 2 N.W.2d 83.

"In *City of Osceola v. Blair*, 231 Iowa at 772, 2 N.W.2d at 84, citing *Scully v. Hallihan*, 365 Ill. 185, 191, 6 N.E.2d 176, 179, the court stated: ' "It is one of the fundamentals of our democratic form of government that every citizen has the inalienable right to follow any legitimate trade, occupation, or business which he sees fit. His labor is his property, entitled to the full and equal protection of the law under the due process clause of the Federal Constitution. It is also embraced within the constitutional provision guaranteeing to everyone liberty and the pursuit of happiness. *Allgeyer v. Louisiana*, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832." '

"*Meyer v. Nebraska*, 262 U.S. at 399, 43 S.Ct. at 625, 67 L.Ed. at 1045, in speaking of the state's inability to deprive any person of life, liberty or property without due process of law, stated:

" ' * * *. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, * * *.'

"However, the provisions of amendment 14 prohibiting a state from depriving any person of life, liberty or property without due process of law does not prohibit the state from exercising its police power to pass and enforce laws as will benefit the health, morals, and general welfare of the people.

"*City of Osceola v. Blair*, 231 Iowa at 772–773, 2 N.W.2d at 84, states: ' " * * This right to pursue any trade or calling is subordinate to the right of the state to limit such freedom of action by statutory regulation where the public health, safety, or welfare of society may require. *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1459." ' See also *Breard v. City of Alexandria, La.*, 341 U.S. 622, 631–633, 71 S.Ct. 920, 927, 95 L.Ed. 1233, 1242–1243 and *Cedar Mem. Park Cem. Ass'n. v. Personnel Assoc., Inc.*, 178 N.W.2d 343, 349 (Iowa 1970).

"Any use of the police power must be reasonable and not arbitrary and capricious. 'It has been frequently held that the due process clauses * * * do not limit the exercise of the state's police power unless the legislation is an arbitrary, unreasonable, or improper use of such power. * * * [citing authorities].' *Burlington and Summit Apts. v. Manolato*, 233 Iowa 15, 20, 7 N.W.2d 26, 29.

"Turning again to *City of Osceola v. Blair*, 231 Iowa at 773, 2 N.W.2d at 84, we find this statement: 'However, in those instances where the police power is invoked to regulate and supervise a legitimate occupation the restraint imposed must be reasonable. * * * In order for such regulations to be lawfully imposed upon the constitutional rights of the citizen to pursue his trade or business, the act passed under the guise of a measure to protect the public health, comfort, or welfare must have a definite relation to ends sought to be attained. *Banghart v. Walsh*, 339 Ill. 132, 171 N.E. 154." '

See also *Pierce v. Incorporated Town of LaPorte City*, 259 Iowa 1120, 1124, 146 N.W.2d 907, 909–910 and *Baker v. Daly*, 15 F.2d 881, 882 (D.C.Or.1926).

"*State v. Thompson's School*, 226 Iowa 556, 561, 285 N.W. 133, 135 has this quote: " 'The right thus granted is, of course, subject to the police power of the state to enact laws essential to the public safety, health, or morals; but, to justify a state in exercising such authority, it must appear that the interest of the public requires such interposition, and that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive to individuals." ' "

Now to the fundamental issues presently entertained.

VI. As aforesaid, Chicago Title maintains the statute in question essentially denies it a property right without due process and equal protection of the law, under both federal and state constitutions.

The substance of Chicago Title's argument is that because the legislatures of some states have permitted title insurance to be written, then by the same process, Chicago Title is endowed with a property right to initiate and conduct a similar business in Iowa. But no such property right exists. At cost of repetition, we must again be mindful of the fact that ours is a federal system, and the Iowa mode of barring title insurance operations simply precludes creation of the very property right which Chicago Title asserts is denied. In the same vein, we are not here concerned with property rights, if any, which Chicago Title might have had were its business operable in Iowa, then banned. See *Asbury Hospital v. Cass County, N.D., supra*. See also *Coal Harbor Stock Farm, Inc. v. Meier*, 191 N.W.2d 583, 587–588 (N.D.1971).

Obviously the due process problem posed is whether the present prohibition has a definite and reasonable relationship to legitimate state goals. *City of Osceola v. Blair*, 231 Iowa at 773, 2 N.W.2d at 84. And the equal protection question put is whether the involved classification bears a fair and substantial relation to the same

state interests. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972); *Redmond v. Carter*, 247 N.W.2d 268, 271 (Iowa 1976). Thus, an equal protection vis-a-vis due process analysis may be said to here merge. *People v. Taylor*, 540 P.2d 320, 322 (Colo. 1975); *Green v. Shama*, 217 N.W.2d at 554–555.

### VII. DUE PROCESS

A variety of reasons have been urged in support of legislation prohibiting the insuring in Iowa of loss or damage arising from defective land titles. A discussion of all these supportive arguments will serve no useful purpose. Rather, in order to sustain the statute presently under consideration we need only consider the abuses which may arise when title insurance is written. See *Keasling v. Thompson*, 217 N.W.2d at 689.

A plaintiff-called witness admitted it was Chicago Title's intent to "convert" the present Iowa abstract-attorney's opinion system to title insurance as the norm for locally determining marketability of titles. Plaintiff also conceded that over a given five-year period it collected approximately $370,000 in title "insurance" premiums, written outside the state for the insuring of Iowa titles, and from these premiums paid out nothing in claims. Obviously, a loss ratio of zero per cent presents a potentially lucrative source of revenue to an insurer of titles and this court cannot say the general assembly overstepped its power in barring a costly form of "insurance" for which plaintiff's own testimony demonstrates there is little need.

Even more potent is the trial court testimony of an intervenor-called Iowa attorney specializing in land titles. This witness opined that in some cases mortgagees receive commissions or rebates from title insurance companies, thus implying like practices may make such insurance a virtual requirement if made available in this state. Also, as previously indicated, real concern in this area has been noted in other pro-

ceedings. See Hearings on S. 2775 Before the Subcommittee on Banking, Housing and Urban Affairs, 92nd Congress, 2nd Session (1972), as related by S. Quiner, "Title Insurance and the Title Insurance Industry", 22 Drake L.Rev. 711, 721–723 (1973), It can hardly be disputed the general assembly could have reasonably concluded the statute in question was necessary for the accomplishment of a general welfare goal—to avoid those exploitive marketing activities which would be inimical to public good and welfare. In other words, it cannot be gainsaid the involved statutory restriction was adopted in order to avoid needless consumer costs and impede the machinations which would otherwise become prevalent between Iowa lenders and title insurance companies, all to public detriment.

■ Again mentioned in Chicago Title's misconceived reliance on the fact that Iowa is the only state which prohibits local insuring of real estate titles. Conceding Iowa so stands—its uniqueness does not make the Act vulnerable to constitutional attack. *New Hampshire Bankers Association v. Nelson*, 336 F.Supp. 1330, 1339 (D.N.H. 1972), cert. den., 409 U.S. 1001, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972).

Clearly Chicago Title has not negated every reasonable basis which supports the involved statute.

Plaintiff's contention that § 515.48(10) deprives it of property without due process of law is without merit.

## VIII. *EQUAL PROTECTION*

■ It is also to us evident the involved statutory prohibition does not deny plaintiff equal protection of the law. As noted above, if a state legislative enactment classifies commercial enterprises for purpose of regulation and such classification, as here, is neither premised upon a suspect criteria nor infringes a fundamental right, a presumption of constitutionality attaches and the statute will be set aside as violative of due process or equal protection only if it is arbitrary and without foundation in public policy, its means are unrelated to objectives, or the distinction drawn is invidious and lacks a rational basis incapable of justification under any conceivable set of facts. *City of New Orleans v. Dukes*, 427 U.S. at 303–304, 96 S.Ct. at 2516–2517; *Hames Mobile Homes, Inc. v. Sellers*, 343 F.Supp. 12, 13 (N.D.Iowa 1972); *Avery v. Peterson*, 243 N.W.2d 630, 633 (Iowa 1976); *Richards v. City of Muscatine*, 237 N.W.2d 48, at 59; *State v. Kramer*, 235 N.W.2d 114, 116 (Iowa 1975); *Catholic Char. of Arch. of Dubuque v. Zalesky*, 232 N.W.2d 539; cf. *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971).

■ As heretofore revealed the legislature is accorded wide discretion in defining classes when a statute involves a categorization of persons or things. If a classification is reasonable and operates equally upon all within the class, it is not subject to constitutional attack. *State v. Books*, 225 N.W.2d 322, 324 (Iowa 1975); *Keasling v. Thompson*, 217 N.W.2d at 689; *Brown Enterprises, Inc. v. Fulton*, 192 N.W.2d 773, 776 (Iowa 1971). See also *Moore v. Haugh*, 341 F.Supp. 1263, 1265–1266 (N.D.Ia.1972), aff'd 409 U.S. 809, 93 S.Ct. 204, 34 L.Ed.2d 70 (1972).

And in *Asbury Hospital v. Cass County*, N.D., 326 U.S. at 215, 66 S.Ct. at 65, the Court significantly declared:

"Statutory discrimination between classes which are in fact different must be presumed to be relevant to a permissible legislative purpose, and will not be deemed to be a denial of equal protection if any state of facts could be conceived which would support it."

See generally *Coal Harbor Stock Farm, Inc. v. Meier*, 191 N.W.2d at 591.

Also brought into play is this cogent statement in *Avery v. Peterson*, 243 N.W.2d at 633:

"When a classification is challenged as being violative of the challenger's equal protection rights, he has the burden of showing the classification clearly, palpably and without doubt infringes on the constitution; and every reasonable doubt will be resolved in favor of constitutionality. *Lee Enterprises, Inc. v. Iowa State*

*Tax Com'n.*, Iowa, 162 N.W.2d 730, 753; *Richards v. City of Muscatine*, Iowa, 237 N.W.2d 48, 59. A challenger must negate every conceivable basis which may support the classification and the classification must be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest. If any state of facts reasonably can be conceived to justify the classification, it will be upheld. *Lunday v. Vogelmann*, Iowa, 213 N.W.2d 904, 907 and citations."

■ Unquestionably, classification must be based upon some apparent difference in situation or circumstance of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them. And discrimination is unreasonable only if the classification lacks rational relationship to a legitimate state purpose. *Redmond v. Carter*, 247 N.W.2d at 271.

On this subject, Chicago Title asserts § 515.48(10) stands as unconstitutional class legislation in any one of three ways. It supportively argues (1) there is no basis for dissimilar treatment between all corporate entities qualified to do business in the state and title insurance companies; (2) the legislature improperly created a separate classification for title insurance, while insurance against all other insurable risks—other than life—are statutorily placed in a general classification; therefore (3) all forms of title protection (insurance, registration and attorney opinions based upon abstract examinations) should be placed in the same classification. We are not so persuaded.

■ In connection with the first above stated argument, this court has long recognized the insurance business is peculiarly subject to special supervision and control. *Bankers L. & Cas. Co. v. Alexander*, 242 Iowa 364, 373–374, 45 N.W.2d 258 (1950); *Holland v. State of Iowa*, 253 Iowa 1006, 115 N.W.2d 161 (1962). See also *Prudential Ins. Co. v. Benjamin*, 328 U.S. at 429–431, 66 S.Ct. at 1155; 15 U.S.C. §§ 1011–1012; 43 Am.Jur.2d, Insurance, § 52; 44 C.J.S. Insurance § 56.

Turning next to above noted second averment, title insurance has several characteristics which distinguish it from other forms of similar coverage. As summarized in 22 Drake L.Rev. at 714–715:

"Title insurance is directed at loss prevention—similar to boiler insurance. Most property and casualty insurance, on the other hand, is concerned to a greater extent with risk assumption and distribution. * * *

"Another significant difference is that title insurance insures against loss resulting from occurrences which have taken place in the past. Most forms of insurance obviously insure against future events. Also, title insurance requires the payment of only one premium, and the policy remains in effect until the property in question is sold by the owner who purchased the policy. The reason for this is that the event which may cause the loss insured against has already occurred at the time of issuance, so the premium actually covers the past, not the future."

■ Thus it cannot be said the instantly applied distinction between types of insurance is invidious or arbitrary and capricious. Noticeably, application of the term "insurance" to a form of contract which, over a five-year period, produced no loss to the insurer, is a strained interpretation of the term.

■ As already demonstrated, a rational basis exists upon which the legislature could logically treat title insurance dissimilarly from other forms of like coverage. Stated otherwise, the general assembly could have reasonably concluded the preclusion of in-state title insurance activities is necessary in order to prevent invidious practices such as rebates and commissions between institutional lenders and title insurance companies, all of which may have been deemed inimical to the public interest. In addition, our legislature might well have determined the competitive market is an ineffective force for effective regulation of title insurance due to the distinguishing oligopolistic nature of the industry. See 22 Drake L.Rev. at 721. These considerations

provide an ample basis for singling out this form of insurance for special legislative treatment, i. e., prohibition.

Chicago Title's claim to the effect § 515.-48(10) violates either the equal protection clause of the United States Constitution or the uniformity provision of our state constitution is also devoid of substance.

All issues here raised by Chicago Title Insurance Company, whether or not discussed above, have been considered and found to be without merit.

AFFIRMED.

MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ., concur.

LeGRAND, REES and REYNOLDSON, JJ., take no part.