**STATE of Iowa, Appellee,**

v.

**Jerry MINER a/k/a Jerome R. Miner d/b/a Wheels, Appellant.**

**No. 67935.**

Supreme Court of Iowa.

March 16, 1983.

Steven J. Kuehl of Bedell, Kunze, Maahs & Kuehl, Spirit Lake, for appellant.

Thomas J. Miller, Atty. Gen., and Richard E. Mull, Asst. Atty. Gen., for appellee.

Considered by LeGRAND, P.J.,* and HARRIS, McCORMICK, McGIVERIN and CARTER, JJ.

McGIVERIN, Justice.

Defendant Jerry Miner appeals from a district court ruling which enjoined him from engaging in the business of brokering used motor vehicles at retail unless and until he is licensed by the Iowa Department of Transportation (DOT) as a used motor vehicle dealer under Iowa Code chapter 322 (1981). The injunction was stayed by the district court pending appeal. The many issues raised by defendant on appeal reflect two basic contentions: (1) Iowa Code section 322.3(2), which requires a person engaged in the business of selling used motor vehicles at retail to be licensed as a used motor vehicle dealer, does not apply to a broker of used cars; and (2) even if section 322.3(2) applies to brokers, its application to defendant's business violates constitutional and statutory provisions. We find no merit in defendant's arguments and affirm the district court's grant of an injunction.

Prior to the filing of this equitable action by plaintiff State of Iowa seeking to enjoin defendant from brokering used motor vehicles at retail without a license, two separate criminal prosecutions were unsuccessfully brought by the State against defendant.

The State then brought this civil action seeking an injunction. Iowa Code § 322.11 (1981). The case was tried by the court upon submission of stipulated evidence. Defendant's counterclaim for damages was denied and is not before us on appeal.

The essential facts of this case are not in dispute. In June 1980 defendant, who had previous experience as a licensed automobile dealer, launched his used car brokerage service under the name of "Wheels." Defendant solicits private owners of motor vehicles who wish to sell their vehicles. The prospective seller and defendant enter into a listing agreement which for 60 days gives defendant the exclusive right to obtain a buyer. An initial fee of $25 is paid to defendant to cover the costs of advertising and showing the vehicle to prospective buyers. If the vehicle is sold, defendant receives a commission of at least $250.

Defendant does not purchase the vehicles himself nor does he obtain title to any of the vehicles; his role is solely that of a middleman. The business of "Wheels" is conducted from a small office. Defendant does not maintain any repair or service facilities for the vehicles he brokers and he

* Senior Judge.

does not maintain a lot on which to display vehicles. However, he does have permission to park his clients' cars on his office parking lot, and the evidence shows that he often parks cars on that portion of the lot which abuts the highway.

At trial the evidence showed that defendant had obtained 86 buyers of used motor vehicles who entered into a written contract with sellers who had listed their vehicles with "Wheels." Fifteen of these transactions involved sellers or buyers who resided outside the state of Iowa.

After "Wheels" was in operation, defendant discussed licensing requirements with members of the DOT. He disregarded their assertions that even as a broker he was required to be licensed as a used motor vehicle dealer. At no time since he has been acting as a used car broker has defendant or his sole employee, Merlin Tritle, attempted to obtain a dealer's license under chapter 322. Sections 322.4–.8 contain provisions concerning application for, issuance and maintenance of a dealer's license. Section 322.4(7) also requires that the dealer furnish a surety bond in favor of any buyer of a motor vehicle damaged due to wrongdoing by the dealer in the sales transaction.

I. *Applicability of section 322.3(2).* Defendant contends that section 322.3(2) and its implementing regulations, 820 Iowa Admin.Code [07, D] ch. 10, do not and cannot apply to brokers of used cars because once licensed as a dealer, a broker lawfully could not broker motor vehicles and such an absurd and unreasonable result should be avoided. We find no merit in these contentions and agree with the district court's decision.

The language of section 322.3(2) is undeniably broad. It provides that:

No person, other than a licensed dealer in new motor vehicles, shall engage in this state in the business of selling at retail used motor vehicles or represent or advertise that he is engaged or intends to engage in such business in this state unless and until the department has licensed such person as a used motor vehicle dealer in the state and has issued to the person a license in writing as in this chapter provided.

The DOT, pursuant to section 322.13 which gives it authority to prescribe rules, has adopted the following definition of "engage in this state in the business": "... doing any of the following acts for purposes of sale of motor vehicles at retail; to acquire, sell, exchange, hold, offer, display, broker, accept on consignment or conduct a retail auction or to act as an agent for the purpose of doing any of the aforementioned acts." 820 Iowa Admin.Code [07, D] § 10.-1(4). In section 322.3(2) the legislature expressly stated that *no person* shall "engage in this state in the business" of selling at retail used motor vehicles unless he is licensed as a used motor vehicle dealer. Therefore, the DOT in rule 10.1(4), in including brokering in the definition of the quoted phrase, was only verbalizing what section 322.3(2) had already directed. Brokers, such as defendant, are engaged in the business of selling motor vehicles at retail.

The inclusion of brokers in the category of persons required to obtain a dealer's license in order to engage in the business of selling motor vehicles at retail also is consistent with the statutory provisions of other states. *See e.g.* Conn.Gen.Stat.Ann. § 14–52 (Supp.1982) ("No person, firm or corporation may engage in the business of the buying, selling, offering for sale or brokerage of any motor vehicle ... without having been issued either a new car dealer's [or] a used car dealer's ... license."); Kan. Stat.Ann. § 8–2401(a) (Supp.1981) (" 'Vehicle dealer' means any person who: ... (3) for commission, money or other thing of value is engaged in the business of bringing buyers and sellers of vehicles together...."); Wash.Rev.Code Ann. § 46.70.-011(3) (Supp.1982) (" 'Vehicle dealer' means any person ... engaged in the business of ... brokering ... the sale of new, or used vehicles....").

When the Iowa statute and regulations are read together, the plain meaning of the two is that defendant must be licensed as a dealer to sell used cars at retail. In like manner, the Ohio Court of Appeals held

that the following statutory language required the licensing of brokers in that state: "No person shall engage in the business of displaying or selling at retail ... motor vehicles in this state or assume to engage in such business without first having a license therefor. . . ." Ohio Rev.Code Ann. § 4517.02 (1975). *Auto Reality Service, Inc. v. Brown,* 27 Ohio App.2d 77, 272 N.E.2d 642 (1971).

■ In Iowa, and also Ohio, the inclusion of brokers within the dealer licensing requirement effectively precludes brokering because a licensed dealer must take title to the vehicles which he sells. Iowa Code §§ 321.104(2), 322.9(1); Ohio Rev.Code Ann. § 4505.18(B).[1] In contrast to a dealer who buys to sell again, Black's Law Dictionary 359 (rev. 5th ed. 1979), a broker is a middleman whose business it is to bring buyer and seller together. A broker has neither possession, management or control of the property affected by the negotiation. *Lawrence Gas Co. v. Hawkeye Oil Co.,* 182 Iowa 179, 183, 165 N.W. 445, 447 (1917). Consequently, once defendant broker obtains a dealer's license the law requires him as a dealer to obtain title to any vehicles he sells. And as a licensed dealer he would also be required to maintain a facility to repair and recondition vehicles. 820 Iowa Admin.Code [07, D] § 10.2(4)(b)(2). The practical result is that brokering of used cars at retail in Iowa is not allowed.

Consequently, defendant contends that the licensing requirement is unreasonable and therefore, inapplicable to his operation. We disagree. We do not believe that the DOT exceeded its authority by including brokers within the licensing requirement. The DOT was following what the legislature had already directed in section 322.3(2).

Our review of the licensing regulations is governed by principles discussed in *Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911, 913 (Iowa 1979). We presume that the rule including brokers within the definition "engage ... in the business" is valid, and

defendant has the burden of proving that a "rational agency" would not have concluded that the rule was within its authority as delegated by the legislature.

Chapter 322 is a regulatory law and not merely a licensing act for raising revenue. *State v. Lindsey,* 165 N.W.2d 807, 808 (Iowa 1969). Its overriding purpose is to protect consumers of motor vehicles from fraud and deception. *Id.* The DOT is given "full authority to prescribe reasonable rules for the administration and enforcement of this chapter." Iowa Code § 322.13. We believe that a rational agency could conclude that this broad grant of authority included the authority to effectuate the regulation of vehicle sales by defining what activities constituted engaging in the business of selling motor vehicles. *See generally Milholin v. Vorhies,* 320 N.W.2d 552, 554 (Iowa 1982).

The fact that a broker who complies with the licensing requirements of chapter 322 cannot function as a broker, because he must take title to the motor vehicles he sells, is a result of a legislative *not* agency enactment. The acquisition of title requirement, Iowa Code § 321.104, was well entrenched in our law when in 1977 the DOT promulgated the rule which included brokers in the definition of "engage in business." The Iowa Administrative procedure Act affords the legislature an opportunity to object to agency rules and to override them by statute. Iowa Code §§ 17A.4(4)(a), .8(8). These steps were not taken by the legislature; therefore, we assume that the legislature approved of the requirement that brokers be licensed as dealers *and* of the resulting application of the title requirement to *all* who initiate the retail sale of motor vehicles.

■ The requirement that a licensed dealer take title to the vehicles he sells assures that the buyer knows to whom to turn if he does not receive good title. The inclusion of all who transact in buying and selling motor vehicles in the licensing re-

---

1. In *Farmers Butter and Dairy Cooperative v. Farm Bureau Mutual Insurance Co.,* 196 N.W.2d 533 (Iowa 1972), we noted that the net result of Iowa's motor vehicle certificate of title laws was to give Iowa a certificate of title law substantially like that of Ohio. *Id.* at 538.

quirement furthers the legislature's attempt to protect the consumer. The combined effect of the rule and statutes is to afford the same protection to all consumers, regardless of the method they choose to purchase a motor vehicle at retail. We conclude that the agency's inclusion in the licensing requirement of *all* who initiate the retail sale of motor vehicles is a rational way to effectuate the legislature's attempt to provide maximum protection to the consumers of motor vehicles.

■ The fact that the licensing requirements may foreclose a certain method of buying and selling used vehicles does not impute to the legislature an intent to enact an unworkable statute. The prohibition of a legitimate business has nothing to do with the outcome of this appeal. *See Chicago Title Insurance Co. v. Huff,* 256 N.W.2d 17, 23–25 (Iowa 1977) (prohibition of in-state sales of title insurance a reasonable exercise of state's police power). The legislature may prohibit any business deemed inimical to public welfare. *Id.* at 25.

We conclude that the plain meaning of section 322.3(2) and regulation 10.1(4) requires defendant to be licensed as a dealer in order to engage in the retail sale of used motor vehicles. We next consider whether the application of the licensing requirement to defendant violates constitutional and statutory provisions.

II. *Constitutional and statutory considerations.* Defendant makes use of the scatter gun approach to raise a number of constitutional and statutory issues. We find no constitutional or statutory provisions which preclude the application of the licensing requirements to defendant.

A. Defendant claims that the licensing requirements deprive him of due process and equal protection under the federal and Iowa constitutions. U.S.Const. amend. XIV; Iowa Const. art. 1, § 9. Defendant made no attempt to obtain a dealer's license; his claims, therefore, are basically substantive due process claims in other guises.

Because the federal and state constitutional provisions contain a similar guaranty, they are deemed identical in scope, import and purpose, and we will look to United States Supreme Court interpretations of the 14th Amendment due process provision for guidance. *Chicago Title Insurance Co.,* 256 N.W.2d at 23.

■■ The modern tendency has been to extend rather than contract police power regulation over economic endeavors. *City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 516–17 (1976); *Chicago Title Insurance Co.,* 256 N.W.2d at 24. Such regularly enacted statutes are given a strong presumption of constitutionality. *Id.* at 25. An economic regulation challenged on substantive due process grounds will not be overturned as long as "there is an evil at hand for correction, and . . . it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563, 572 (1955).

■ The well-recognized evil addressed by section 322.3(2) and its regulations is the possibility of fraud and deception in the retail sale of new and used motor vehicles. There can be no dispute that the State may legislate to protect consumers from fraud and deception in the purchase of motor vehicles. *Detroit Automotive Purchasing Services, Inc. v. Lee,* 463 F.Supp. 954, 968 (D.Md.1978); *see generally Ferguson v. Skrupa,* 372 U.S. 726, 730–31, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93, 97–98 (1963); *State v. Hutchinson Ice Cream Co.,* 168 Iowa 1, 9, 147 N.W. 195, 198 (1914), *aff'd,* 242 U.S. 153, 37 S.Ct. 28, 61 L.Ed. 217 (1916). The problem posed is whether the use of police power was a rational and reasonable method of protecting consumers of motor vehicles.

An automobile is a complex and expensive consumer item. It also is highly mobile. At the final stage of an automobile sale transaction, a broker, operating as defendant does, would have possession of the buyer's money, a certificate of title to the vehicle already signed in blank by the seller, and quite probably, physical possession

of the vehicle itself. It is not irrational for the State to seek a comprehensive means of eliminating all potential fraud and deception and afford protection for both the buyer and the seller of the vehicle. As a practical matter, the method it has chosen results in the requirement that while engaged in the business of selling vehicles at retail, *all* who induce or attempt to induce a consumer to take part in the sale of a motor vehicle must be licensed as dealers. Iowa Code § 322.3(2).

Our function is not that of a super-legislature which weighs the wisdom of the legislation, *Detroit Automotive Purchasing Services,* 463 F.Supp. at 967; we look only to whether the means chosen by the State are rational and reasonably necessary to the accomplishment of the State's purpose. We hold that the inclusion of brokers of used cars within the licensing requirement meets this test.

Brokers have not been singled out by this legislation. They have simply been included in the class of all other persons engaged in the business of inducing the sale of motor vehicles at retail. The fact that the licensing statute will effectively preclude brokering is not determinative. In order to protect consumers from fraud and deception in the sale of motor vehicles, the State may prohibit the operation of brokering through the requirement that a person licensed under chapter 322 take title to any vehicle offered for sale. *See Chicago Title Insurance Co.,* 256 N.W.2d at 24.

■ Nor is the law rendered unconstitutional simply because the State, legislatively, could devise a separate licensing scheme for brokers. We do not believe that the availability of a less restrictive alternative is a relevant consideration in the context of a substantive due process challenge to economic legislation. *See West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

From the inception of his idea to start a used-car brokering service, defendant knew and understood the licensing requirements of section 322.3(2). He even made a special trip to the DOT in Ames to discuss the applicability of licensing to his operation.

The requirement was not vague, it was clear and explicit. The intent of the State was clear. Defendant merely chose to disregard the clear requirements of the law. We find no infringement of defendant's due process and equal protection rights.

B. As an alternative method of challenging the validity of the application of section 322.3(2) to him, defendant raises a two-pronged attack against the provision's effect on commerce: (1) it violates the Commerce Clause, U.S. Const., art. 1, § 8; and (2) it violates the Iowa Competition Law, Iowa Code §§ 553.4, .5 (1981). Again, we find defendant's contentions to be without merit.

■ The challenged provision is neutral on its face with respect to all persons who attempt to induce consumers to purchase a motor vehicle: all are included within the definition "engage ... in the business." The license requirements do not shield any licensed participant from competition. *See Detroit Automotive Purchasing Services,* 463 F.Supp. at 966–67.

■ Moreover, even if the licensing requirements do shield some retailers licensed under chapter 322, state regulatory action is exempt. Iowa Code § 553.6(4). The Iowa Competition Law does not attempt to prohibit economic regulations imposed by the State when the State has a significant interest in regulating such economic activity. *See Bates v. State Bar of Arizona,* 433 U.S. 350, 359–63, 97 S.Ct. 2691, 2696–98, 53 L.Ed.2d 810, 820–22 (1977) (factors in considering whether state regulation fell within state action exemption of Sherman Act included: (1) suit was against the state; (2) state's interest in regulating such conduct; and (3) whether the state had a clearly defined policy); *State v. Cedar Rapids Board of Realtors,* 300 N.W.2d 127, 128 (Iowa 1981) (since Iowa's statute is intended to complement similar federal laws, it is appropriate to examine federal statutes and cases for guidance in construction of Iowa's Competition Law). The State's policy of regulating the sale of motor vehicles at retail and its interest in protecting consumers from fraud and deception has been detailed above and need not be repeated here.

The State's regulation of the sale of motor vehicles inhibits neither competition nor interstate commerce. Defendant's contention that the regulation is an unconstitutional burden on interstate commerce because, as a practical matter it prohibits brokering, is without merit.

The licensing requirements affect the commercial interests of an Iowa used-car broker in like manner both within and without the state of Iowa. The brokering of used cars is not an inherently interstate mode of commerce. Because the licensing requirements are applied evenhandedly to all segments of commerce, they do not violate the Commerce Clause per se. *Detroit Automotive Purchasing Services,* 463 F.Supp. at 962.

■■■ Defendant seeks to invoke the Commerce Clause to protect a specific method of conducting interstate commerce—brokering used cars. The Commerce Clause, however, "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 125–29, 98 S.Ct. 2207, 2213–15, 57 L.Ed.2d 91, 99–102 (1978). The licensing requirements of which defendant complains affect only the method of selling cars. Compliance with these requirements has no affect on the interstate new and used car market. There is no violation of the Commerce Clause.

We conclude, therefore, that the licensing requirements of section 322.3(2) and applicable regulations apply to defendant as a broker of used cars at retail. None of the constitutional or statutory challenges raised by him preclude such application.

III. *Injunctive relief.* Defendant's final contention is that the district court abused its discretion in granting injunctive relief. He bases this claim on the argument that the granting of an injunction creates great hardships on defendant. *Green v. Advance Homes, Inc.,* 293 N.W.2d 204, 208 (Iowa 1980).

We note initially that defendant is only imagining his hardships—the injunction was stayed pending appeal. Upon de novo review of this equitable action, Iowa R.App.P. 4, we find that an injunction was and still is warranted.

Defendant admits in his amended and substituted answer that the State has no adequate remedy at law in this case. *O.K. Tire and Rubber, Co. v. Oswald,* 166 N.W.2d 749, 751 (Iowa 1969). An injunction would require defendant to seek a dealer's license under chapter 322 with the resulting consequence that he could no longer operate as a broker. On the other hand, a denial of an injunction would have prohibited the State from regulating the retail sale of motor vehicles in order to protect consumers from fraud and deception. When these hardships are weighed, *Green,* 293 N.W.2d at 208, we find no abuse of the district court's discretion. We will not disturb a discretionary order unless it " 'is shown that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982).

We have considered all issues and contentions raised by defendant. The decision of the district court is affirmed; defendant was properly enjoined from engaging in the business of brokering or otherwise dealing in the retail sale of motor vehicles in Iowa unless and until he is licensed as a dealer under chapter 322.

AFFIRMED.