Rodney Lee CEASER, Petitioner,

v.

John AULT, Warden, Respondent.

No. C99–2023–MWB.

United States District Court,
N.D. Iowa,
Eastern Division.

Oct. 2, 2001.

Shellie Lyn Knipfer of the State Appellate Defender, Des Moines, Iowa, for petitioner.

Robert P. Ewald, Assistant Attorney General, Des Moines, Iowa, for respondent.

## ORDER AND MEMORANDUM OPINION REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...... 984
 A. *Factual And Procedural Background* ...... 984
 B. *Issue Presented And Objections To Report And Recommendation* ...... 986
 C. *Standard Of Review* ...... 987

II. *EQUAL PROTECTION ANALYSIS* ...... 988
 A. *Effect Of Equal Protection Challenge On Ineffective Assistance Of Counsel Claim* ...... 988
 B. *Level Of Scrutiny In Constitutional Challenge* ...... 988
 C. *Role Of Federal Habeas Court* ...... 989
 D. *Petitioner's Claim* ...... 991
 1. *Governmental interest* ...... 991
 2. *Nexus requirement: Governmental interest and disparate treatment* ...... 997

III. *INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM* ...... 1000

IV. *CERTIFICATE OF APPEALABILITY* ...... 1000

V. *CONCLUSION* ...... 1000

## I. INTRODUCTION

### A. Factual And Procedural Background

■ In this petition for a writ of *habeas corpus*, the court is asked to review the Iowa Supreme Court's finding that an Iowa sentencing statute is constitutional.

Petitioner Rodney Lee Ceaser ("Ceaser") has petitioned the court for *habeas* relief pursuant to 28 U.S.C. § 2254, claiming that his confinement resulting from his August 22, 1997, state court conviction of second-degree robbery is unlawful and in violation of his constitutional rights.[1] The

1. Ceaser was convicted under section 711.3 of the Iowa Code. Robbery is defined as:

A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:

 1. Commits an assault upon another.

 2. Threatens another with or purposely puts another in fear of immediate serious injury.
 3. Threatens to commit immediately any forcible felony.

It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.
Iowa Code § 711.1. Second degree robbery, the offense of which Ceaser was convicted, is all robbery that is not first degree robbery.

parties do not dispute the underlying facts that support Ceaser's conviction, which are admittedly relatively benign. The Iowa Supreme Court succinctly described the facts:[2]

In May 1997, employees of Ray's SuperValu stopped Ceaser for shoplifting $30 worth of steak. Jason Robinson, the store manager, observed Ceaser put a quantity of meat down the front of his pants. Robinson confronted Ceaser and asked Ceaser to step to the back room with him, stating to Ceaser that he thought Ceaser had some stolen goods. Ceaser denied taking anything and quickly strode toward the exit. Another employee, Matt Bullerman, grabbed Ceaser and wrestled him to the floor. Ceaser struggled against the restraint by "throwing punches." During this tussle, the stolen meat came out of Ceaser's pants, coming to rest on the floor, and Robinson's glasses were knocked off.

Once Robinson and Bullerman had Ceaser under control, they proceeded to a back storeroom. On the way there and twice in the storeroom, Ceaser tried to escape. During the last attempt he successfully bolted from the storeroom, but Bullerman caught him in one of the aisles. Another struggle occurred in which Bullerman sustained a minor eye injury. Soon thereafter, the police arrived and Ceaser gave up his resistance.

*State v. Ceaser,* 585 N.W.2d 192, 193 (Iowa 1998).

Upon the return of a guilty verdict, Ceaser was sentenced on September 25, 1997. Furthermore, because second degree robbery is included within section 902.12 of the Iowa Code, the sentencing judge's discretion was limited to imposing the statutory maximum for second degree robbery, which is ten years. Iowa Code §§ 902.12 (for certain crimes, must impose 100% of statutory maximum sentence); 902.9(4) (10 years maximum sentence for second degree robbery). Ceaser will not be eligible for parole or work release until he has served at least eighty-five percent of his ten year sentence pursuant to section 903A.2. *See* Iowa Code § 903A.2 (referencing sentences for offenses listed in section 902.12).

In the way of further explanation of Ceaser's constitutional challenge, section 902.12, known as Iowa's "85% rule," requires that defendants convicted of certain enumerated forcible felonies serve "one hundred percent of the maximum term of the person's sentence and shall not be released on parole or work release ... [e]xcept as otherwise provided in section 903A.2." *Id.* § 902.12. Because section 903A.2 places a fifteen percent cap on the accumulation of earned time for good behavior with respect to inmates convicted of offenses listed in 902.12, the effect of sec-

---

*See id.* § 711.3. First degree robbery, then, is committed when a person "while perpetrating a robbery, ... purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon." *Id.* § 711.2.

First degree robbery is a class "B" felony, while second degree robbery is a class "C" felony. *See id.* §§ 711.2, 711.3. Both offenses, furthermore, are included within the ambit of Iowa's 85% rule, which will be explained further in the body of this opinion. *Id.* § 902.12.

2. Ceaser has not challenged the factual findings of the Iowa court; accordingly, this court presumes they are correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court *shall be presumed to be correct.* The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.") (emphasis added).

tions 902.12 and 903A.2 together is that Ceaser serve a minimum of eighty-five percent of the maximum sentence statutorily prescribed for second degree robbery—meaning Ceaser must serve a minimum of eight and one-half years of his ten year sentence.

Ceaser filed a direct appeal to the Iowa Supreme Court in which he challenged, *inter alia*, the constitutionality of section 902.12.[3] Specifically, Ceaser argued on appeal that Iowa's 85% rule deprived him of equal protection under both the Iowa and federal constitutions by arbitrarily classifying offenders to which the statute applies. Further, because his trial counsel failed to raise the constitutional challenge and, consequently, failed to preserve the issue for appeal, Ceaser argued that his counsel's performance constituted ineffective assistance of counsel within the meaning of the Sixth Amendment to the United States Constitution.[4] Before reaching the ineffective assistance of counsel claim, however, the Iowa Supreme Court first addressed Ceaser's challenge to the constitutionality of section 902.12. Moreover, in light of the court's ultimate determination that section 902.12 passed constitutional muster, it did not reach the ineffective assistance of counsel claim, because the court noted that trial counsel could not be held incompetent for failing to pursue a

meritless issue. *See Ceaser*, 585 N.W.2d at 192.

## B. Issue Presented And Objections To Report And Recommendation

Ceaser presents a single issue for this court's review in his petition for a writ of *habeas corpus*:

Defendant was denied the effective assistance of counsel when trial counsel failed to challenge the application of Iowa Code § 902 .12, the 85 percent rule, to his sentence for second degree robbery.

Supporting facts: Defendant's conviction is based upon his theft of $30.58 worth of steak and the physical contact that followed when a store employee tackled defendant as he attempted to leave the store. A person convicted of second degree robbery must serve 85% of the sentence. Second degree robbery is the only class "C" forcible felony subject to the 85% rule even though there are other more serious and life threatening class "C" forcible felonies that are not subject to the 85% rule. Second degree robbery does not involve the infliction or attempted infliction of serious injury or the use of a dangerous weapon. Whereas other class "C" forcible felonies do involve serious injury, the intentional infliction of serious injury, or use of a dangerous weapon (e.g., willful injury,

---

3. In addition, Ceaser argued on appeal that the district court erred in failing to instruct the jury on self-defense. In this petition, however, he abandoned that claim.

4. The Sixth Amendment was incorporated into the Due Process Clause of the Fourteenth Amendment and made applicable to the states in the landmark case *Gideon v. Wainwright*, 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In incorporating the Sixth Amendment through the Fourteenth Amendment, the Supreme Court recognized that the

effective assistance of counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'" *Id.* at 343–44, 83 S.Ct. 792 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and citing *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); and *Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941)).

felony child endangerment, and forcible felony terrorism).

Pet., at ¶ 12(# 1).

Magistrate Judge Paul A. Zoss filed a Report and Recommendation on April 3, 2001, recommending that relief be denied on Ceaser's claim. Judge Zoss concluded, *inter alia,* that the Iowa Supreme Court's determination that section 902.12 is constitutional was not "contrary to clearly established federal law" and, accordingly, Ceaser's trial counsel's failure to raise the issue could not have prejudiced the results of Ceaser's sentencing. *See* 28 U.S.C. § 2254 (grounds for *habeas corpus* relief). On April 16, 2001, Ceaser, through counsel, filed two objections to Judge Zoss's Report and Recommendation (# 11). In his objections, Ceaser agrees that the appropriate standard to apply in challenging the constitutionality of section 902.12 is rational basis. Nevertheless, Ceaser equates Judge Zoss's conclusion that a *habeas* court is forbidden from " 'judg[ing] the wisdom, fairness, or logic' of the Iowa statute" with the court's failure to apply the rational basis analysis at all. RR at 14. Therefore, the petitioner objects to the Report and Recommendation on the ground that the court failed to question whether the legislative classification at issue has a rational relationship to some legitimate purpose. Pet.'s Objections at 3–4.

Ceaser's other objection to the Report and Recommendation pertains to the court's recommendation that a certificate of appealability be denied. Specifically, Ceaser argues that the court violated Federal Rule of Appellate Procedure 22(b) by not setting forth "why a certificate of appealability should not issue." He asserts:

Substantial claims [of constitutional deprivation] cannot be brushed under the carpet with a simple conclusory statement that they are not substantial. The only way to guarantee that petitioners with valid claims will be heard in the circuits is by clarifying the standard of "substantial showing" and by requiring a court dismissing appealability to demonstrate its analysis in reaching the conclusion.

Pet.'s Objections at 5. In other words, the petitioner argues that the court's recommendation that a certificate of appealability be denied must be supported by findings or an analysis concerning the petitioner's failure to make a substantial showing that he was deprived of a constitutional right.

### C. Standard Of Review

■ The standard of review to be applied by the district court to a Report and Recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Court of Appeals for the Eighth Circuit has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report when such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk,* 15 F.3d at 815). However, the plain language of the statute mandates *de novo* review only for "those portions of the report or specified proposed findings or recommendations to

which objection is made." 28 U.S.C. § 636(b)(1). Therefore, those portions of the proposed findings or recommendations contained in the magistrate judge's report and recommendation to which no objections are filed are reviewed only for "plain error." *See Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994) (reviewing factual findings for "plain error" when no objections to the magistrate judge's report were filed).

## II. EQUAL PROTECTION ANALYSIS

### A. Effect Of Equal Protection Challenge On Ineffective Assistance Of Counsel Claim

■ Similar to the Iowa Supreme Court's analysis of Ceaser's ineffective assistance of counsel claim, the first issue this court must consider is the constitutionality of section 902.12. This is so because under *Strickland v. Washington,* which announced the standard by which to judge the effectiveness of counsel, counsel's performance will not taint the reliability of a trial's results unless the defendant shows both that counsel's performance was deficient and that the errors made by counsel prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Thus, in order to successfully challenge the results of a trial on the ground of ineffective assistance of counsel, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694, 104 S.Ct. 2052. It follows, therefore, that if Iowa's 85% rule does not run afoul of the Equal Protection Clause, as Ceaser claims it does, no prejudice could have resulted from his attorney's failure to raise the constitutional challenge. Further, because Ceaser objected to Judge Zoss's analysis of the constitutionality of section 902.12,

this court will review the issue *de novo.* *See* 28 U.S.C. § 636(b)(1).

### B. Level Of Scrutiny In Constitutional Challenge

■ It is well-settled that when statutes classify along lines that do not implicate suspect or quasi-suspect characteristics nor burden fundamental rights, courts apply a rational basis level of scrutiny. *E.g., Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("[A classification neither involving fundamental rights nor proceeding along suspect lines] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."); *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (citing *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *Bowen v. Gilliard,* 483 U.S. 587, 600–03, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987); *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–79, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Dandridge v. Williams,* 397 U.S. 471, 484–85, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)); *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ("[T]his Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.") (citing *Cleburne v. Cleburne Living Ctr., Inc.,* 473

U.S. 432, 439–41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (*per curiam*)). When reviewing the constitutionality of such a statute, the court's inquiry is simply whether a classification recognized by a statute is rationally related to a legitimate governmental interest. *E.g., Heller,* 509 U.S. at 319, 113 S.Ct. 2637. In other words, the court must ask whether the government has a legitimate interest in making the distinction, and, if so, whether the distinction has a rational relationship to that interest.

■ The Supreme Court has carefully guarded the categories of classifications that implicate heightened scrutiny and has repeatedly refused to expand those categories. *Cf. Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (holding the Constitution does not confer a fundamental right upon homosexuals to engage in sodomy); *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (holding wealth discrimination alone does not implicate heightened scrutiny and declining to hold that public education is a fundamental right). To date, only race, alienage, gender, and illegitimacy implicate a level of scrutiny beyond that of rational basis. *See Loving v. Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race subject to strict scrutiny); *Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (national ancestry and ethnic origin subject to strict scrutiny); *United States v. Virginia,* 518 U.S. 515, 531, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (gender classifications require "exceedingly persuasive" justification); *Craig v. Boren,* 429 U.S. 190, 217, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (gender subject to intermediate scrutiny); *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) (illegitimacy subject to intermediate scrutiny). Further, in light of the fact fundamental rights are extended only to those liberties that are "deeply rooted in this Nation's history and traditions," *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (opinion of Powell, J.), it is clear that the distinctions made in section 902.12 do not implicate heightened scrutiny. Moreover, Ceaser does not argue that heightened scrutiny is warranted in this case. In fact, Ceaser asserts in his brief in support of his *habeas* petition that his "constitutional claim is examined under a rational basis standard." Pet.'s Br., at 8. The specific classifications recognized by section 902.12 involve distinguishing between persons convicted of second degree robbery and persons convicted of other class "C" forcible felonies that are not subject to the 85% rule. Accordingly, because this classification neither implicates a suspect class nor a fundamental right, rational basis review is the appropriate standard to apply in determining whether section 902.12 runs afoul of the United States Constitution.

### C. Role Of Federal Habeas Court

■ This court's review of the Iowa Supreme Court's decision concerning Ceaser's attack on the constitutionality of the 85% rule is governed by the federal *habeas* statute, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254. In order to obtain a writ of *habeas corpus,* Ceaser must demonstrate that his case satisfies one of the conditions set forth in the statute. *See Williams v. Taylor,* 529 U.S. 362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Specifically, the *habeas* statute provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Because Ceaser has not argued that the Iowa Supreme Court's determination of the facts in his case were unreasonable, the court will consider only whether he has satisfied the conditions of section 2254(d)(1).

■ In 1999, the Supreme Court addressed the meaning of these prerequisites to *habeas* relief. *See Williams*, 529 U.S. at 402–13, 120 S.Ct. 1495. The next term, in 2000, the Court reaffirmed its holding in *Williams* in the case *Ramdass v. Angelone*, 530 U.S. 156, 165–66, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000). The first clause of § 2254(d)(1), which involves state court decisions that are contrary to clearly established federal law, allows for the issuance of a writ of *habeas corpus* when "the state court's decision [is] substantially different from the relevant precedent of this Court." *Williams*, 529 U.S. at 405, 120 S.Ct. 1495. In other words, a state court decision is contrary to federal law when the state court applies a rule that is " 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed' " to Supreme Court precedent. *Id.* (quoting Webster's Third New International Dictionary 495 (1976), for the definition of "contrary," as used in § 2254(d)(1)). State court decisions will also invoke section 2254(d)(1) when "the state court decision confronts a set of facts that are materially indistinguishable from a decision of this Court and [the state court] nevertheless arrives at a result different from [Supreme

Court] precedent." *Id.* at 406, 120 S.Ct. 1495.

In this instance, the Iowa Supreme Court did not confront a set of facts that were materially indistinguishable from a United States Supreme Court decision. Further, the Iowa Supreme Court identified the applicable controlling precedent, *i.e.*, the rational basis test, and applied it to section 902.12. As discussed above, the Supreme Court has repeatedly said that rational basis review is to be applied to all constitutional challenges of statutes that do not classify on the basis of a suspect characteristic. It cannot, therefore, be said that the Iowa Supreme Court's application of rational basis review to section 902.12 was contrary to federal law.

■ Accordingly, the court must next consider whether the Iowa Supreme Court's decision satisfied the second condition set forth in section 2254(d)(1), which involves the "unreasonable application" of the United States Supreme Court's clearly established precedent. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 407, 120 S.Ct. 1495 (interpreting the language of § 2254(d)(1)). The Court held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. 1495. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. The Court, furthermore, emphasized that an unreasonable application is not tantamount to an incorrect application. *Id.* at 410, 120 S.Ct. 1495. Conversely, the Court ruled that "the most important point is that an *un-*

*reasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (emphasis in original). If the state court identified the correct legal standard and applied it reasonably, the conditions of section 2254 have not been met and the federal court is without authority to issue a writ, even though the federal *habeas* court may not agree with the state court's result. *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

Again, the Iowa court identified the correct controlling legal standard to be applied to section 902.12; that is, rational basis. The question before this court, therefore, is whether the Iowa Supreme Court reasonably applied that standard to the Iowa statute. The court turns now to that inquiry.

### D. Petitioner's Claim

Ceaser claims that section 902.12 violates his right to equal protection because it unreasonably distinguishes among certain forcible felons. More specifically, he contends that the Iowa legislature's inclusion of second degree robbery in 902.12 is arbitrary, capricious, and irrational because other class "C" forcible felonies that are inherently more dangerous are not subject to application of the 85% rule. Class "C" forcible felonies not subject to the 85% rule include: willful injury, terrorism, sexual abuse in the third degree, assault with intent to commit sexual abuse, kidnapping in the third degree, and felonious child endangerment. *See* Iowa Code §§ 702.11 (classifying certain offenses as forcible felonies), 708.4 (willful injury), 708.6 (terrorism), 709.4 (sexual abuse in the third degree), 709.11 (assault with intent to commit sexual abuse), 710.4 (kidnapping in the third degree), and 726.6 (child endangerment).

### 1. Governmental interest

That states have a legitimate interest in punishing criminal offenders is obvious. *E.g., United States v. Turkette,* 452 U.S. 576, 586 n. 9, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (recognizing states's sovereign power to punish criminal offenders); *Flowers v. Warden,* 677 F.Supp. 1275, 1280 (D.Conn.) ("Pursuant to its police powers, the state investigates, prosecutes, tries and punishes criminal misconduct."), *rev'd on other grounds,* 853 F.2d 131 (2d Cir.1988); *Amusement Devices Ass'n v. Ohio,* 443 F.Supp. 1040, 1050 (S.D.Ohio 1977) ("The Constitution of the United States reserves to the respective states broad and substantial police powers which include the power to define criminal activity within their jurisdictions and the power to punish such activity."). State legislatures, furthermore, have broad discretion in establishing the punishment for the commission of criminal offenses. *E.g., Foucha v. Louisiana,* 504 U.S. 71, 76 n. 4, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("There is no doubt that the States have wide discretion in determining punishment for convicted offenders, but the Eighth Amendment ensures that discretion is not unlimited."); *Collins v. Johnston,* 237 U.S. 502, 510, 35 S.Ct. 649, 59 L.Ed. 1071 (1915) (stating that "[t]o establish appropriate penalties for the commission of crime, and to confer upon judicial tribunals a discretion respecting the punishment to be inflicted in particular cases, within limits fixed by the lawmaking power, are functions peculiarly belonging to the several states" and that "the comparative gravity of the criminal offenses, and whether their consequences are more or less injurious" are for state legislatures to decide); *cf.*

*Ramdass,* 530 U.S. at 165, 120 S.Ct. 2113 (stating that "[s]tates have some discretion in determining the extent to which a sentencing jury should be advised of probable future custody and parole status in a future dangerousness case") (citing *O'Dell v. Netherland,* 521 U.S. 151, 166, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997)); *Apprendi v. New Jersey,* 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (recognizing that the Constitution permits judges to exercise discretion within statutory guidelines when imposing sentences). Furthermore, under a rational basis analysis, a state need not articulate the precise reasons why it chose to impose different sentences for different crimes; nothing in the Constitution prevents states from making classifications along non-suspect lines if there is a rational basis for doing so. *See Heller,* 509 U.S. at 319, 113 S.Ct. 2637 (citing *Nordlinger,* 505 U.S. at 15, 112 S.Ct. 2326); *accord Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("Under rational-basis review, where a group possesses 'distinguishing characteristics relevant to interests the State has the authority to implement,' a State's decision to act on the basis of those differences does not give rise to a constitutional violation.") (quoting *Cleburne,* 473 U.S. at 441, 105 S.Ct. 3249); *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("[T]he State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification."). The Supreme Court has summarized the scope of rational basis review in equal protection analyses as follows:

> We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2100–2101, 124 L.Ed.2d 211 (1993). *See also, e.g., Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. *See, e.g., Beach Communications, supra,* 508 U.S., at 314–315, 113 S.Ct., at 2096; *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 462, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399 (1988); *Hodel v. Indiana,* 452 U.S. 314, 331–332, 101 S.Ct. 2376, 2386–2387, 69 L.Ed.2d 40 (1981); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (per curiam). Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *See, e.g., Nordlinger v. Hahn,* 505 U.S. 1, 11, 112 S.Ct. 2326, 2331–2332, 120 L.Ed.2d 1 (1992); *Dukes, supra,* 427 U.S., at 303, 96 S.Ct., at 2516. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger, supra,* 505 U.S., at 15, 112 S.Ct., at 2334. *See also, e.g., United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437,

441, 3 L.Ed.2d 480 (1959). Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications, supra,* 508 U.S., at 313, 113 S.Ct., at 2101. *See also, e.g., Nordlinger, supra,* 505 U.S., at 11, 112 S.Ct., at 2334; *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990); *Fritz, supra,* 449 U.S., at 174–179, 101 S.Ct., at 459–461; *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979); *Dandridge v. Williams, supra,* 397 U.S., at 484–85, 90 S.Ct., at 1161–62.

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications, supra,* 508 U.S., at 315, 113 S.Ct. at 2098. *See also, e.g., Vance v. Bradley, supra,* 440 U.S., at 111, 99 S.Ct., at 949; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *Locomotive Firemen v. Chicago, R.I. & P.R. Co.,* 393 U.S. 129, 139, 89 S.Ct. 323, 328, 21 L.Ed.2d 289 (1968). A statute is presumed constitutional, *see supra,* at 2642, and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973) (internal quotation marks omitted), whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis

review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v. Williams, supra,* 397 U.S., at 485, 90 S.Ct., at 1161, quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). *See also, e.g., Burlington Northern R. Co. v. Ford,* 504 U.S. 648, 651, 112 S.Ct. 2184, 2187, 119 L.Ed.2d 432 (1992); *Vance v. Bradley, supra,* 440 U.S., at 108, and n. 26, 99 S.Ct., at 948 and n. 26; *New Orleans v. Dukes, supra,* 427 U.S., at 303, 96 S.Ct., at 2516; *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981).

*Heller,* 509 U.S. at 319–21, 113 S.Ct. 2637; *accord Garrett,* 531 U.S. at —— – ——, 121 S.Ct. at 963–64.

It is within this context that the Iowa Supreme Court reviewed and ultimately upheld the constitutionality of the 85% rule. *See Ceaser,* 585 N.W.2d at 196. Specifically, the Iowa Supreme Court laid out the standard as follows:

Because a suspect classification is not implicated, we apply the rational basis standard in evaluating section 902.12. *See State v. Fagen,* 323 N.W.2d 242, 243 (Iowa 1982). Under this standard, section 902.12 is constitutional if the classification made by this statute "is a reasonable one and operates equally upon all within the class." *Bell,* 572 N.W.2d at 912. We will uphold a classification "if any state of facts reasonably can be conceived to justify it." *McMahon v.*

*Iowa Dep't of Transp.*, 522 N.W.2d 51, 57 (Iowa 1994).
*Id.*

Employing the analytical framework identified above, the Iowa Supreme Court first noted that Iowa's sentencing scheme classifies forcible felonies into distinct levels.[5] *Id.* at 196–97 (citing Iowa Code § 702.11). Before distinguishing between punishment, however, the Iowa Code first identifies those crimes defined as forcible felonies, which are "felonious child endangerment, assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, [and] burglary in the first degree." Iowa Code § 702.11. Persons convicted of any forcible felony must serve some form of mandatory imprisonment, despite the fact that the Code provides generally for deferred judgments, deferred sentences, and suspended sentences for other crimes. *See id.* § 907.3 (granting sentencing judges discretion to impose deferred judgments, deferred sentences, and suspended sentences upon a guilty verdict or plea, but specifically excluding forcible felonies). Because parole remains available for persons convicted of forcible felonies, the four levels into which the Code divides punishment for these crimes concern whether parole is an option at all and, if so, how much time must be served before being eligible for parole. *See id.* § ch. 906 (allowing for parole generally if in the "best interest of society and the offender").

Turning now to the four levels of forcible felonies, the Code divides them into four subclasses: class "A," class "B," class "C," and class "D." Persons convicted of class "A" felonies "must serve a life sentence and cannot be released on parole 'unless the governor commutes the sen-

tence to a term of years.'" *Ceaser*, 585 N.W.2d at 196–97 (quoting Iowa Code § 902.1). Class "A" felonies are: first degree murder, first degree sexual assault, and first degree kidnapping. *Id.* at 197 (citing Iowa Code §§ 707.2, 709.2, 710.2). Because a class "A" felon is sentenced to confinement "for the rest of the defendant's life," and because the Iowa Code specifically excludes a class "A" felon from receiving parole or work release, Iowa's 85% rule does not apply to these sentences, as class "A" felons cannot earn any time off their sentences for good behavior. *See* Iowa Code § 902.1.

Unlike class "A" felonies, Iowa's Criminal Corrections code does not have a separate section identifying the remaining subclasses of felonies. *See generally* Iowa Code ch. 900. Instead, the forcible felonies provided in section 702.11 are capable of being categorized as either class "B," "C," or "D," depending on the defendant's intent and the results of the defendant's conduct. *See id.* §§ 708.4 (willful injury, which is a class "C" felony "if the person causes serious injury to another," but is a class "D" felony "if the person causes bodily injury to another"; however, a class "D" willful injury is not a forcible felony), 708.6 (terrorism, which is a class "C" felony "when the person, with the intent to injure or provoke fear or anger in another, shoots, throws, launches, or discharges a dangerous weapon at, into, or in a building, vehicle, airplane, railroad engine, railroad car, or boat, occupied by another person . . . and thereby places the occupants or people in reasonable apprehension of serious injury . . . ."), 709.4 (sexual abuse in the third degree, which is a class "C" felony), 709.11 (assault with intent to commit sexu-

---

**5.** Although wholly irrelevant to the outcome of this decision, the Iowa Supreme Court and Judge Zoss's Report and Recommendation analyzed the Iowa sentencing scheme by dividing it into three, rather than four, catego-

ries. This court, however, has chosen to categorize the different subclasses along the lines of the four classes of felonies, "A," "B," "C," and "D."

al abuse, which is a class "C" felony when "[a]ny person commits an assault ... with intent to commit sexual abuse ... [and] thereby causes serious injury to any person" but is a class "D" felony "if the person thereby causes any person a bodily injury other than serious injury," and is an "aggravated misdemeanor if no injury results.), 710.4 (kidnapping in the third degree, which is a class "C" felony), and 726.6 (child endangerment, which is a class "C" felony when "[a] person commits child endangerment resulting in serious injury to a child or minor").

This alone demonstrates that the legislature perceived different evils associated with each crime. However, Ceaser's challenge to the 85% rule is premised on his contention that, *as among the class "C" forcible felonies,* there is no reasonable basis to include second degree robbery, while excluding other felonies that involve the use of force, within the ambit of section 902.12. Persons convicted of felonies enumerated in section 902.12 are subject to the 85% rule. The only class "C" forcible felony subject to the rule is second degree robbery; the other felonies included within 902.12 are class "B" felonies. Iowa Code §§ 902.12 (listing crimes subject to 85% rule). Specifically, those crimes subject to the 85% rule include: murder in the second degree, a class "B" felony; attempted murder, a class "B" felony; sexual abuse in the second degree, a class "B" felony; kidnapping in the second degree, a class "B" felony; robbery in the first degree, a class "B" felony; and robbery in the second degree, a class "C" felony. *See id.* §§ 707.3, 707.11, 709.3, 710.3, 711.2, 711.3. Class "C" felonies *not* subject to the 85% rule include: willful injury, terrorism, sexual abuse in the third degree, assault with intent to commit sexual abuse, kidnapping in the third degree, and felonious child endangerment. *Compare id.* § 902.12 (listing offenses subject to 85% rule), *with id.* § 702.11 (defining forcible felony).

Persons convicted of class "C" forcible felonies other than second-degree robbery are eligible to earn one day off of their sentences for each day of good conduct while in custody. *Id.* § 903A.2. Furthermore, these defendants may earn up to a five day reduction per month for participating in employment, treatment, or other educational programs. *Id.; see id.* § 906.5 (subject to certain specified limitation, the parole board must review the status of persons in custody as the result of a class "C" or class "D" felony). Persons convicted of second-degree robbery, on the other hand, "are eligible for a reduction of sentence equal to fifteen eighty-fifths of a day for each day of good conduct" pursuant to section 903A.2 but can accumulate no more than a fifteen percent reduction off the maximum sentence of ten years. *See id.* § 903A.2. The consequence is that, like Ceaser, defendants convicted of second-degree robbery must serve a minimum of eight and one-half years in prison. *See id.* §§ 903A.2 (outlining accumulation of earned time, with fifteen percent lid on crimes listed in 902.12), 902.9(4) (providing ten year maximum sentence for class "C" non-habitual felons).

■ As stated above, the Iowa legislature is not required to articulate its reasons for classifying along non-suspect lines. *See Heller,* 509 U.S. at 312, 113 S.Ct. 2637. Furthermore, in light of the strong presumption of validity afforded section 902.12, Ceaser bears the burden of proof in this challenge. *See, e.g., Johnson v. City of Minneapolis,* 152 F.3d 859, 862–63 (8th Cir.1998) ("Because no protected class is involved, the legislative decision ... is reviewed only for a rational basis. Where rational basis review is appropriate, the plaintiff/appellant bears the burden of proof, and the statute in question bears a strong presumption of validity.") (citing *Beach Communications,* 508 U.S. at 314,

113 S.Ct. 2096, which in turn cites *Lyng v. Automobile Workers,* 485 U.S. 360, 370, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988)); *Gavin v. Branstad,* 122 F.3d 1081, 1090 (8th Cir.1997) ("Because neither a fundamental right nor a suspect classification is at issue here, we apply rational basis review and accord the [statute in question] 'a strong presumption of validity.' ") (citing *Heller,* 509 U.S. at 319, 113 S.Ct. 2637). The Iowa Supreme Court correctly applied the rational basis standard of review and discussed the rationale for including second-degree robbery in the class of felonies subject to the 85% rule. *Ceaser,* 585 N.W.2d at 196–98. The Iowa court noted that "the legislature is free to impose disparate punishments for different crimes so long as the offenses are distinguishable on their elements." *Id.* at 196 (citing *Delaney v. Gladden,* 397 F.2d 17, 19 (9th Cir.1968); *State v. Montoya,* 196 Colo. 111, 582 P.2d 673, 676 (Colo.1978) (*en banc* )). After comparing the elements of second-degree robbery and other class "C" forcible felonies, the Iowa court concluded that "[s]uch an examination reveals that the elements of those offenses not included within section 902.12 are different from the elements of second-degree robbery." *Id.* Accordingly, the Constitution does not mandate that the Iowa legislature impose identical sentences for all class "C" forcible felonies. *Id.* The fact the crimes are comprised of different elements is, at least superficially, enough to justify the disparate treatment with respect to punishment for the commission of these offenses. The question remains, however, whether such disparate treatment is *rationally related* to the government's legitimate interest in punishing criminals.

As stated above, Ceaser bears the burden of disproving every " 'reasonably conceivable state of facts that could provide a rational basis for the classification,' " here, for the disparate treatment of second degree robbery and other class "C" forcible felonies. *See Beach Communications,* 508 U.S. at 313, 113 S.Ct. 2096 (quoting *Sullivan,* 496 U.S. at 485, 110 S.Ct. 2499). Ceaser argues that assault while participating in a felony, willful injury, and felonious child endangerment, all class "C" felonies not included in section 902.12, by definition require the infliction of serious bodily injury. *Ceaser,* 585 N.W.2d at 198. Furthermore, terrorism requires the use of a dangerous weapon in order to elevate it to a class "C" felony. *Id.* Consequently, Ceaser argues that it is unreasonable to include second degree robbery within the scope of section 902.12, because second degree robbery need not result in injury nor does it require the use of a weapon, which are inherently more serious crimes. *Id.*

The Iowa Supreme Court identified several alternative rationales underpinning the inclusion of second degree robbery within the scope of section 902.12. *Id.* Namely, the Iowa court compared second degree robbery with the crimes of assault while participating in a felony, willful injury, terrorism, third degree sexual abuse, third degree kidnapping, first degree arson, and felonious child endangerment. *Id.* After a detailed and well-reasoned analysis, the court concluded that "the different treatment afforded these crimes [is] 'based upon some apparent difference in situation or circumstance ... which establishes the necessity or propriety of distinction between them.' " *Id.* at 197 (alteration in original) (quoting *Chicago Title Ins. Co. v. Huff,* 256 N.W.2d 17, 29 (Iowa 1977)). The court found that the Iowa legislature reasonably could have determined the following:

[P]ersons who are willing to use force to accomplish a theft, even when that force has not resulted in serious injury or does not involve a dangerous weapon, pose a greater risk to society than persons whose assaultive behavior is not

used as a means to accomplish another crime.

*Id.*

### 2. Nexus requirement: Governmental interest and disparate treatment

Like the Iowa Supreme Court, once this court determines that there is a reasonable basis for the distinction made in section 902.12 and once it is found that the classification operates equally on all members of the class, the court must uphold the statute. *See id.* at 199 (citing *Collins,* 237 U.S. at 510, 35 S.Ct. 649). The class at issue here is convicted second degree robbery felons. All persons convicted of second degree robbery are subject to the 85% rule; thus, all members of the class are treated equally. *See id.* (citing *Harris v. State,* 386 So.2d 393, 396 (Miss.1980) (holding there was no "invidious class discrimination" in statute denying parole to all persons convicted of robbery with an exposed firearm, in part because all persons convicted of this crime were treated alike)).

 Contrary to Ceaser's assertion in his objections to the Report and Recommendation, a court may not " 'sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *Heller,* 509 U.S. at 319, 113 S.Ct. 2637 (quoting *Dukes,* 427 U.S. at 303, 96 S.Ct. 2513). While Ceaser is correct that the court must apply the rational basis test in reviewing section 902.12, he incorrectly contends that Judge Zoss's well-reasoned review of the Iowa Supreme Court's decision was not an application of that standard. Nevertheless, the court will again apply that standard, even though the Iowa Supreme Court and Judge Zoss both have correctly applied the test.

 The elements of second degree robbery are: "(1) a person intends to commit a theft, and (2) in order to accomplish the theft or [to] escape from the crime scene, (3) the person commits an assault (4) without purposely inflicting or attempting to inflict serious injury and when not armed with a dangerous weapon." *Ceaser,* 585 N.W.2d at 197. By definition, second degree robbery requires that the perpetrator use force in order to perpetuate the crime. As Judge Zoss noted, "[t]he legislative purpose in protecting society from this type of crime is obvious, despite the practical fact that the statute will, of necessity, encompass the shoplifter as well as the jewel thief." R.R, at 14. The other crimes listed in section 902.12 also involve the infliction of injury or the use of force employed to further the underlying crime. *See* IOWA CODE § 902.12. For example, that second degree murder involves force goes without saying. Attempted murder, too, involves force, because a person commits this crime when he or she "with the intent to cause the death of another person ..., the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person." *Id.* § 707.11.

Furthermore, sexual abuse in the second degree involves the use of a dangerous weapon or the threat of the use of force, "creating a substantial risk of death or serious injury to any person." *Id.* § 709.3. Moreover, a person commits sexual abuse in the second degree when aided or abetted by another who used force to commit sexual abuse, and when a person commits sexual abuse against another person under the age of twelve. *Id.* Kidnapping in the second degree is committed when a person is held for ransom or when the perpetrator is armed with a dangerous weapon. *Id.* § 710.3. Someone who commits robbery in the first degree either,

with the intent to further the commission of a theft, inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon. *Id.* § 711.2. Second degree robbery need not result in serious injury nor be accomplished while armed with a dangerous weapon. *See id.* § 711.3. However, similar to the other crimes in 902.12 that do not by definition result in injury, second degree robbery offenders demonstrate an indifference toward the lives of innocent bystanders. In order to realize some measure of material gain, no matter how small, the violators of kidnapping in the second degree (ransom kidnapping) and robbery in the first and second degrees put lives and safety at risk.

The Iowa Supreme Court recognized that this indifference was a reasonable basis upon which the Iowa legislature could have concluded it was desirable to include second degree robbery within section 902.12 while excluding other class "C" felonies. *Ceaser,* 585 N.W.2d at 198. In its comparison of the class "C" felonies, the Iowa Supreme Court noted that assault is a common element of second degree robbery, assault with intent to commit sexual abuse, and assault while participating in a felony. *Id.* at 198–99. However, these crimes are distinguishable on the ground that only second degree robbery is committed with an intent to perpetrate a *property* crime, which the legislature reasonably could have concluded was a more grievous offense. *Id.* at 199.

There are several reasons why the legislature could have made this determination. The purposes of criminal law and the theories of punishment undoubtedly impacted the legislature's decision with respect to what crimes should be subject to the 85% rule. Broadly speaking, the two primary theoretical models of punishment, retributivism and utilitarianism, guide legislative decisionmakers' determinations of what amount of punishment to impose. Allison

Marston Danner, *Constructing a Hierarchy of Crimes in International Criminal Law Sentencing,* 87 Va.L.Rev. 415, 437 (2001).

> The broad purposes of the criminal law are . . . to make people do what society regards as desirable and to prevent them from doing what society considers to be undesirable. Since criminal law is framed in terms of imposing punishment for bad conduct, . . . the emphasis is more on the prevention of the undesirable than on the encouragement of the desirable.

WAYNE R. LaFave & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 1.5, at 30 (1986).

Both specific and general deterrence is, therefore, a primary focus of criminal punishment. *See generally id.* § 1.5, at 30–40. It would be reasonable for the legislature to distinguish between property crimes and crimes against persons on the basis of their amenability to being deterred. The legislature could conclude that crimes against property are based on calculating self-interest, while crimes against persons are crimes of "hate and passion" and that, as a result, crimes of passion are not as susceptible to deterrence. Some studies indicate that, unlike property crimes, "crimes against the person have relatively low recidivism rates." William L. Barnes, Jr., Note, *Revenge on Utilitarianism: Renouncing a Comprehensive Economic Theory of Crime and Punishment,* 74 Ind.L.J. 627, 648 (1999) (citing Allen J. Beck & Bernard E. Shipley, Bureau of Justice Statistics Special Report, Recidivism of Prisoners Released in 1983, at 6 (1989)). It would, therefore, be reasonable to conclude two things from these statistics. First, one of the purposes of incarceration is to protect the public from criminals. However, if a defendant is not likely to be a repeat offend-

er, longer terms of confinement do not necessarily protect the public any more than shorter terms. Second, inclusion of class "C" crimes against persons would not further the legislative goal of deterrence, while society would arguably reap some benefits from including second degree robbery within the 85% rule, because stiffer penalties for property crimes arguably are more capable of serving a deterrent effect. Therefore, the legislature could have concluded that the benefits garnered from longer terms of confinement for those class "C" forcible felonies not listed in section 902.12 would be small in comparison to the resources necessary to confine these defendants.

There is, of course, no universal consensus on whether deterrence is served by longer terms of confinement at all. However, universal consensus is extraordinarily rare, and it clearly would not be unreasonable for the Iowa legislature to determine that, because second degree robbery is a property crime, it differs in nature from other class "C" forcible felonies and, consequently, that the goal of deterrence would be better effectuated by ensuring second degree robbery defendants receive harsher penalties.

██ Thus, even though "the standard of rationality ... must find some footing in the realities of the subject addressed by the legislation," that requirement is met here because there is a reasonable basis upon which to differentiate between second degree robbery and other class "C" forcible felonies. *See Heller,* 509 U.S. at 321, 113 S.Ct. 2637. To summarize, these reasons include: (1) a legislative determination that the use of force in furtherance of another crime is more deserving of punishment; (2) defendants who commit crimes against persons have lower rates of recidivism, thus longer terms of confinement do not necessarily protect society from individual defendants; and (3) prop-

erty crimes are self-interested and calculated attempts to amass personal gain and, therefore, longer terms of confinement may be more capable of deterring both the defendant and the would-be defendant from committing future crimes, because property crime defendants do not act in the heat of the moment.

For these reasons and for the reasons articulated by the Iowa Supreme Court, inclusion of second degree robbery within section 902 .12 serves a legitimate purpose and is rationally related to that purpose. As Judge Zoss noted, it is unfortunate that Ceaser found himself subject to application of the 85% rule when the value of goods he was attempting to steal was not great— only thirty dollars and fifty-eight cents. However, along the same lines that the legislature determined that "[i]t is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen," the legislature did not define robbery based upon the value of the property attempted to be stolen. *See* IOWA CODE § 711.1 (robbery defined).

██ Ceaser undoubtedly did not realize that stealing thirty dollars worth of steak from the grocery store would result in at least eight and one-half years of confinement. However, in arguing that this unfair result renders Iowa's 85% rule unconstitutional merely because the statute includes second degree robbery while excluding other class "C" forcible felonies, which he contends are more egregious, Ceaser urges the court to do precisely what the United States Supreme Court has forbade—to "judge the wisdom, fairness, or logic" of the Iowa statute, and this is not the court's role on *habeas* review. *See Richenberg v. Perry,* 97 F.3d 256, 261 (8th Cir.1996) (citing *Heller,* 509 U.S. at 319, 113 S.Ct. 2637; and *Beach Communications,* 508 U.S., at 314–15, 113 S.Ct. 2096). Accordingly, the court will adopt

the findings of the Report and Recommendation, because the court finds that "there is a rational relationship between the disparity of treatment [in section 902.12] and some legitimate governmental purpose." *See Heller*, 509 U.S. at 320, 113 S.Ct. 2637. The court further finds that the Iowa Supreme Court both identified the controlling federal law as determined by United States Supreme Court precedent and correctly applied that law in its scrutiny of Iowa's 85% rule. Under the strict limitations places upon a federal court conducting a *habeas* review of a state court decision by 28 U.S.C. § 2254, as interpreted by *Williams*, the court finds no error in the Iowa court's decision.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

 Furthermore, because this court finds that section 902.12 does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, no prejudice could have resulted from the failure of Ceaser's trial attorney to raise the constitutional challenge. Absent a showing of prejudice, Ceaser cannot successfully maintain an ineffective assistance of counsel claim. Thus, the court need not reach the performance prong of the *Strickland* analysis. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

### IV. CERTIFICATE OF APPEALABILITY

 Ceaser's second objection to the Report and Recommendation is that the magistrate judge did not explain his rationale in concluding that a certificate of appealability should be denied. A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and under Federal Rule of Appellate Procedure 22(b), *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir.1997), so long as the court finds a substantial

showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c); *see also Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir.), *cert. denied*, 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 184 (2000); *Mills v. Norris*, 187 F.3d 881, 882 n. 1 (8th Cir.1999); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir.), *cert. denied*, 525 U.S. 1007, 119 S.Ct. 524, 142 L.Ed.2d 435 (1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir.1998), *cert. denied*, 525 U.S. 1166, 119 S.Ct. 1083, 143 L.Ed.2d 85 (1999); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997), *cert. denied*, 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994)).

 Applying this standard to the issue raised in Ceaser's section 2254 petition, the court concludes that Ceaser has failed to make the requisite "substantial showing" with respect to whether Iowa's 85% rule runs afoul of the United States Constitution, for all the reasons stated above. The court, therefore, will overrule his objection and deny Ceaser's petition for a certificate of appealability.

Finally, the court has reviewed Judge Zoss's findings on and recommended disposition of issues to which no timely objection was made and finds no "plain error" therein. *See Griffini*, 31 F.3d at 692 (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

### V. CONCLUSION

The court finds Ceaser has failed to show the Iowa Supreme Court decided his case in a manner contrary to federal law.

Furthermore, the court has reviewed the objected to portions of Judge Zoss's Report and Recommendation *de novo* and has found that Judge Zoss correctly applied the rational basis standard to its scrutiny of section 902.12 of the Iowa Code. Therefore, the court adopts the Report and Recommendation and **denies Ceaser's petition** for a writ of *habeas corpus*. Accordingly, the court **orders judgment be entered in favor of the respondent and against Ceaser.**

Furthermore, the court **denies** Ceaser's request for a **certificate of appealability.**

**IT IS SO ORDERED.**